## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ISAAC BONILLA, on behalf of himself and others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> POWER DESIGN INC, et al., <br><br> Defendants. | Civil Action No. 16-642 (JDB) |

## MEMORANDUM OPINION & ORDER

Plaintiff Isaac Bonilla brought this action, on behalf of himself and other similarly situated individuals, alleging violations of the Fair Labor Standards Act and several District of Columbia labor laws. His core allegation is that he and his coworkers (collectively, "Bonilla") have been illegally deprived of overtime pay and misclassified as independent contractors while working as electrical workers on a construction project in the District of Columbia. As defendants, Bonilla has named those he believes to be his "employers": Power Design Inc., the electrical subcontractor that directed his work; DDK Electric, Inc., the labor broker that handled his pay; and Clark Construction Group, LLC, the general contractor for the project. Clark Construction has moved to dismiss, arguing that Bonilla has failed to plead that the general contractor was his "employer" under federal and D.C. law, and that it is insulated from any vicarious liability for alleged violations by its subcontractors. Clark Construction is correct on the first point, but incorrect on the second. Its motion to dismiss will therefore be granted in part.

**BACKGROUND**

In November 2015, Isaac Bonilla began his employment as an electrical worker on a renovation project at 2121 H Street in Northwest Washington, D.C. Compl. [ECF No. 1] ¶ 30. Power Design directed the work, provided most of the tools, and managed the time sheets for the workers on site. Id. ¶¶ 33, 36–37. An individual from DDK Electric was also present on the jobsite, distributing paychecks and certain IRS forms. Id. ¶¶ 34–35. Based on these allegations, Bonilla contends that Power Design and DDK Electric were both his employers, with the authority to direct and supervise his work, make hiring and firing decisions, and set wage and hour policies. See id. ¶¶ 16, 22, 29. Bonilla's complaint does not include similarly detailed allegations regarding Clark Construction. Although Bonilla does allege that Clark Construction was the "general contractor" for the project, id. ¶ 29, his complaint is vague as to whether this fact makes Clark Construction his "employer" under federal and D.C. law, compare id. ¶ 29 ("[D]efendants Power Design and DDK were joint employers of plaintiff . . . defendant Clark Construction was the general contractor . . . ."), with id. ¶ 27 ("[D]efendants were employers of plaintiff . . . within the meaning of [federal and District of Columbia law].").

Bonilla brings four claims against each of the three defendants in their capacities as his "employer[s]." In Counts I and II, Bonilla asserts that the defendants have violated the Fair Labor Standards and D.C. Minimum Wage Act Revision Acts by failing to pay him overtime for hours worked in excess of forty per week. Count III alleges violations of the D.C. Wage Payment and Collection Law stemming from defendants' failure to pay that overtime. And Count V alleges that defendants misclassified Bonilla as an "independent contractor" in violation of the D.C. Workplace Fraud Act. Bonilla's complaint further asserts, in Count IV, that Clark Construction is vicariously liable for the wage payment violations of Power Design and DDK Electric—regardless

of whether Clark Construction was itself Bonilla's "employer." Clark Construction has moved to dismiss all these claims. It first seeks to dismiss any claims premised on its status as Bonilla's "employer," contending that Bonilla has failed to plead the existence of an employer-employee relationship as required by federal and D.C. law. See Def.'s Mot. to Dismiss [ECF No. 13-1] at 2–4. Clark Construction also seeks to dismiss claims premised on the alleged violations of its co-defendants, claiming to be insulated from any such vicarious liability by a contractual agreement with Power Design. See id. at 4–6.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the plaintiff's complaint. Browning v. Clinton, 292 F.3d 235, 242 (D.C. Cir. 2002). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. at 678. Though "detailed factual allegations" are not required, the complaint must contain "more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action." Twombly, 550 U.S. at 555. While the Court must accept as true all of the factual allegations contained in the complaint, it need not accept "a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678.

## DISCUSSION

The Fair Labor Standards Act, D.C. Minimum Wage Act Revision Act, D.C. Wage Payment and Collection Law, and D.C. Workplace Fraud Act each impose obligations on "employer[s]." See 29 U.S.C. § 207(a)(1); D.C. Code §§ 32-1003(c), 32-1302, 32-1331.04(a).

3

The term "employer" is given a similar definition in each statute. See 29 U.S.C. § 203(d); D.C. Code §§ 32-1002(3), 32-1301(1), 32-1331.01(3). Because of the definitions' similarity, courts in this district have consistently concluded that "determinations of employer or employee status under the FLSA apply equally under the District of Columbia wage laws." See, e.g., Thompson v. Linda & A., Inc., 779 F. Supp. 2d 139, 146 (D.D.C. 2011).

Under the FLSA, an employer is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). Employment status under the FLSA is a function of the "economic reality" prevailing between the parties—"the extent to which typical employer prerogatives govern the relationship between the putative employer and employee." Morrison v. Int'l Programs Consortium, Inc., 253 F.3d 5, 11 (D.C. Cir. 2001) (internal quotation marks omitted). In assessing that "economic reality," courts should consider factors such as whether the alleged employer "(1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." Id. (internal quotation marks omitted); see Wilson v. Hunam Inn, Inc., 126 F. Supp. 3d 1, 5–6 (D.D.C. 2015) (applying Morrison at the motion to dismiss stage).

Here, Bonilla has failed to allege any facts indicative of the economic reality prevailing between him and Clark Construction. His bare allegation that Clark Construction was his employer, Compl. ¶ 27, is a legal conclusion that the Court need not accept as true. Bonilla thus leans hard on the only relevant factual allegation in his complaint: that Clark Construction was the "general contractor" for the project at issue. See id. ¶ 29. Bonilla asks the Court to infer from the label "general contractor" that Clark Construction "inherent[ly]" wielded "indirect control" over those working at the project site. See Pl.'s Opp'n [ECF No. 14-1] at 4–5. But as a general matter,

such labels are "only relevant to the extent that they mirror economic reality." Morrison, 253 F.3d at 11 (internal quotation marks omitted). As to the economic reality prevailing between Bonilla and Clark Construction, though, Bonilla's complaint is silent. In that respect, Bonilla falls short of the example set by those plaintiffs who, relying on detailed factual allegations, have successfully alleged that a general contractor was their "employer" under federal law. See, e.g., Luna-Reyes v. RFI Constr., LLC, 109 F. Supp. 3d 744, 751 (M.D.N.C. 2015); Deras v. Verizon Md., Inc., No. DKC 09-0791, 2010 WL 3038812, at *5–8 (D. Md. July 30, 2010); Mendoza v. Essential Quality Constr., Inc., 691 F. Supp. 2d 680, 685–86 (E.D. La. 2010). The Court has identified no case (and Bonilla has cited none) where a plaintiff survived a motion to dismiss merely by affixing the label "general contractor" to a defendant, as Bonilla tries to do here. Bonilla knows how to allege the existence of an employer relationship; he did so twice in this very complaint. See Compl. ¶¶ 16, 22. As to Clark Construction, however, he has failed to do so. For these reasons, any claims proceeding against Clark Construction as Bonilla's "employer" must be dismissed.

Those claims premised on Clark Construction's vicarious liability, however, survive as a result of the D.C. Wage Theft Prevention Amendment Act. That Act amended both the D.C. Minimum Wage Act Revision Act and Wage Payment and Collection Law to make general contractors, like Clark Construction, vicariously liable for wage payment violations by their subcontractors. See Wage Theft Prevention Amendment Act of 2014, D.C. Act 20–426, § 2(b)(2) (codified at D.C. Code § 32-1303(5)) (amending the Wage Payment and Collection Law); id. § 3(i) (codified at D.C. Code § 32-1012(c)) (amending the Minimum Wage Act Revision Act). Following that amendment, the operative language in both D.C. laws is as follows:

> When the employer is a subcontractor alleged to have failed to pay an employee any wages earned, the subcontractor and the general contractor shall be jointly and severally liable to the subcontractor's employees for violations [of the law].

5

D.C. Code §§ 32-1012(c), 32-1303(5). Here, Bonilla has pled that Power Design and DDK Electric were his employers, see Compl. ¶¶ 16, 22, that they were subcontractors of Clark Construction, id. ¶ 65, and that they failed to pay him wages that he earned under the Minimum Wage Act Revision Act and Wage Payment and Collection Law, id. ¶¶ 55, 60. Thus, he has adequately alleged that Clark Construction is liable for those violations.

Clark Construction makes only one attempt to resist this conclusion. Its argument rests on a 2014 emergency amendment to the Wage Theft Prevention Amendment Act, which provided an exception to the principle of vicarious liability described above. Under the emergency amendment, Clark Construction contends, a general contractor can be released from vicarious liability as "provided in a contract between the contractor and subcontractor," so long as the contract was in effect on the date that the vicarious liability provision first came into force. See Wage Theft Prevention Correction and Clarification Emergency Amendment Act of 2014, D.C. Act 20–544, § 2(a)(1) (amending the Wage Payment and Collection Law); id. § 2(b)(4) (amending the Minimum Wage Act Revision Act). Although the specific amendment cited by the parties appears to have expired in early 2015, a similar emergency amendment is currently in effect. See Wage Theft Prevention Correction and Clarification Emergency Amendment Act of 2016, D.C. Act 21–480, § 2(a)(1) (amending the Wage Payment and Collection Law); id. § 3(d)(1) (amending the Minimum Wage Revision Act).

Relying on the emergency amendments, Clark Construction pushes forward (with little explanation) the following language from its contract with Power Design:

> Subcontractor shall be liable to Clark and the Owner for all loss, cost and expense attributable to any acts of commission or omission by Subcontractor, its employees and agents, and lower-tier subcontractors resulting from failure to comply with any Federal, state or local laws, codes, ordinances or regulations including, but not limited to, any fines, penalties or corrective measures.

6

Def.'s Mot. to Dismiss at 5. Clark Construction contends that this provision releases it from any vicarious liability.[1] But the Court disagrees. As Bonilla points out, Clark Construction can invoke this provision only after Power Design's "failure to comply with Federal, state, or local laws" has caused Clark Construction some "loss, cost [or] expense." The provision assumes, therefore, that Clark Construction can indeed be held liable for legal violations by Power Design. Although the agreement does afford Clark Construction some protection from that risk, it does not take the form of a release from liability. Instead, the agreement makes Power Design "liable" to Clark Construction for any losses that Clark Construction suffers. The provision, properly understood, is an indemnity clause. It does not free Clark Construction from the imposition of vicarious liability in this case.

## CONCLUSION

Because Bonilla has failed to plead that Clark Construction was his "employer" under federal and District of Columbia law, claims proceeding against Clark Construction in that capacity must be dismissed. But Clark Construction will not be dismissed from this case entirely. Bonilla has adequately alleged that Clark Construction is vicariously liable under two D.C. statutes for wage violations by Power Design and DDK Electric. For the time being, therefore, those claims against Clark Construction premised on a theory of vicarious liability will survive. Thus, it is hereby **ORDERED** that [13] defendant's motion to dismiss is **GRANTED in part** and **DENIED in part**. It is further **ORDERED** that Clark Construction shall file its responsive pleading as required by Federal Rule of Civil Procedure 12(a)(4). **SO ORDERED**.

/s/
JOHN D. BATES
United States District Judge

Dated: August 22, 2016

---

[1] Clark Construction does not explain why this contract with Power Design should release it from any vicarious liability for the alleged violations of DDK Electric.